UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

---------------------------------------------------------x
In re:

All Seasons Gallery, Inc.,

                 Debtor.
---------------------------------------------------------x
Robert L. Pryor, Chapter 7 trustee of the
bankruptcy estate of All Seasons Gallery, Inc.,

                 Plaintiff,

    - against -

Benjamin Muse,

                 Defendant.
---------------------------------------------------------x

Chapter 7

Case No.: 8-06-72542-478

Adv. Pro. No.: 8-09-08287-478

# MEMORANDUM DECISION

*Appearances:*

Pryor & Mandelup, LLP
*Attorneys for the Chapter 7 trustee*
By: John H. Hall, Jr., Esq.
Michael Marina, Esq.
675 Old Country Road
Westbury, New York 11590

Benjamin Muse
*Pro se Defendant*
8 Northumberland Drive
Shoreham, New York 11786

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the Chapter 7 trustee's action seeking (1) a determination pursuant to 11 U.S.C. §§ 541 that $4,245.51 is due and owing from Defendant to the Debtor in connection with the sale and installation of a certain stove by the Debtor while the Debtor was in bankruptcy and (2) an order directing the Defendant to turn over the debt owed to the Debtor's bankruptcy estate to the trustee with interest from August 22, 2008 pursuant to 11 U.S.C. § 542. This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O), and 11 U.S.C. §§ 541 and 542 and Article 2 of the New York Uniform Commercial Code. The following constitutes the Court's finding of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

<u>FACTS</u>

The Debtor was in the retail business of selling fireplaces and stoves and installing such goods. Its principal was Steve Turrigiano who had been installing fireplaces and stoves for 15 years before the Debtor's business ceased. The Debtor filed for Chapter 11 reorganization on October 12, 2006. On November 7, 2007, the Office of the United States Trustee (the "United States Trustee") filed a motion seeking the dismissal of the Debtor's bankruptcy case or, in the alternative, conversion of the Debtor's Chapter 11 case to a Chapter 7 case under the Bankruptcy Code. The Debtor did not file any written opposition to the motion and after a hearing on the United States Trustee's motion on December 11, 2010, the Court entered an order converting the Debtor's case to a Chapter 7 case on December 12, 2010. The Chapter 7 trustee was appointed and the Debtor's business ceased operations on the date of conversion.

On July 14, 2009, the Trustee commenced this adversary proceeding against the Defendant seeking payment of an invoice (the "Invoice") dated November 14, 2007, a few days

1

after the United States Trustee filed its motion to dismiss or convert the bankruptcy case. Defendant had purchased a Vermont Castings Dutchwest medium wood burning stove (the "Stove") from the Debtor plus installation services.  In referencing the installation, the Invoice only states "up and out" and "installed".  The Defendant paid $1,961.26 by credit card at the time he placed the order for the Stove.  The charge was later reversed by the credit card company.  While the Invoice lists a total sales price of $3,908.41 plus $337.10 in tax for a total of $4,245.51 due for the Stove and installation services, there was no breakdown with respect to the pricing for the Stove and the installation.  The Defendant disputes his liability for the payment of the Stove and the amount charged for installation services and asserted a counterclaim for damages.

The Court conducted a trial at which the trustee's accountant, Mr. Turrigiano and the Defendant testified.  As an initial matter, the Court finds the Defendant's testimony to be credible and consistent and Mr. Turrigiano's testimony not to be credible in light of the facts and circumstances.  Defendant testified that he never received an Invoice from the Debtor for the Stove and installation until he obtained a copy from the Trustee after this adversary proceeding was commenced.  At the time the Defendant purchased the Stove, the purchase price did not include the cost of installation and the required piping to vent the Stove.  Mr. Turrigiano testified he could estimate approximately how much piping and what parts (i.e., elbows and lengths of pipes, etc.) would be needed depending on whether a customer's house was a one story or two story building, but he would need to visit the residence in order to determine the actual cost of the installation.  However, Mr. Turrigiano did not visit the Defendant's property prior to the day he installed the Stove to obtain measurements for the amount of piping that would be necessary.

2

According to the Defendant, Mr. Turrigiano represented at the time the Defendant purchased the Stove that the cost of installation would be no more than $500.

On the date of installation, the Defendant states that Mr. Turrigiano did not provide a quote for installation but just proceeded to install the Stove.  After installing the Stove, Defendant testified that Mr. Turrigiano said that he would provide the actual cost of installation later when he figured out what was used.  Therefore, Mr. Turrigiano left the Defendant's residence without collecting any moneys owed with respect to the installation.  While Mr. Turrigiano testified that he usually kept a file as to the measurements for the piping and what parts were needed for an installation job, the Trustee's professionals did not find any records of such measurements for the installation done at Defendant's home.  The only document the Trustee found in the Debtor's books and records relating to the sale of the Stove and installation was the Invoice that was dated prior to the installation.

The Court finds that the $1,961.26 paid by the Defendant at the time he placed an order for the Stove was not simply a deposit but a payment for the Stove itself given the exact amount of the payment made.  It appears that the parties did not come to an agreement on what the actual pricing of the installation would be when the Defendant purchased the Stove as Mr. Turrigiano did not visit the Defendant's home prior to the installation to take measurements and determine what work would be necessary.  The Debtor's books and records do not reflect how much piping was needed for the installation of the Stove, the cost of those materials or the labor involved for the installation of the Stove and piping at the Defendant's residence to support the amount charged.

The delivery and installation of the Stove occurred on or around December 12 or 17,

2007.  Mr. Turrigiano argued that the delivery and installation should have occurred after November 14, 2007 b ut prior to the conversion of the Debtor's Chapter 11 case to a Chapter 7 case on December 12, 2007.  It appears, however, that he previously testified at a deposition that the installation was done around the date of conversion.  At the trial he could not remember exactly when the installation was done.  After conversion of the Debtor's bankruptcy case to one under Chapter 7, the Debtor was required to cease operations.

Aside from the discrepancy in pricing for the installation, there appears to be an issue with the quality of the installation of the piping for the Stove.  Mr. Turrigiano testified that the installation of the Stove took the whole day, about six or seven hours, to complete.  After the installation, Mr. Turrigiano did not test the Stove to see if the Stove was working and whether the Stove was properly vented.  While Mr. Turrigiano stated that he did not light the Stove because the Defendant did not want it lit at the time, the Defendant argued that he insisted that the Stove be tested but Mr. Turrigiano quickly left without testing the Stove.  Although Mr. Turrigiano stated that all his customers basically had his cell phone number because he conducted his business from the cell phone and he is always out of the showroom, he intentionally did not give the Defendant his cell phone number after the installation so the Defendant would not be able to contact him personally for any reason.  Given that the installation took place on or after the date the Debtor's bankruptcy case was converted to a Chapter 7, the Debtor could not warranty any of the installation work done at the Defendant's premises.  In addition, in light of Mr. Turrigiano's decision to withhold his cell phone number so the Defendant would not be able to contact him should there be any problems with the installation or the Stove, the Court finds under the facts and circumstances, that Mr. Turrigiano

intentionally did not test the Stove and installation for his own reasons and not because of any alleged request by the Defendant to not do so at the time of installation.

On the evening of the installation, the Defendant lit the Stove and some time thereafter there was an explosion in which the glass panel on the Stove door blew out and smoke and soot filled the room and allegedly ruined a rug where the Stove was located.  Defendant tried calling the Debtor's business the next day but no one answered the phone.  On the second day after the installation, Defendant tried calling the Debtor and again got no answer.  The Defendant then drove to the Debtor's premises and found the doors to the Debtor's business closed and no one around.

Defendant's home suffered water damage when rainwater leaked into the home a few days later where the piping for the Stove exited the roof.  Mr. Turrigiano had sealed the space between the Stove pipe and the roof with just caulk and silicone.  Mr. Turrigiano admitted that it is possible for water leaks around the pipe although it does not happen often.  The Defendant subsequently purchased some black tar from Home Depot to seal any leaks around the Stove pipe on the roof.

With the Debtor's business closed, there was no warranty on the Debtor's installation of the Stove piping and the Stove.  Defendant had no means of reaching Mr. Turrigiano to fix the installation because he did not have Mr. Turrigiano's cell phone number and no one answered the phones at the Debtor's premises.  The Defendant saw Mr. Turrigiano at a Home Depot a few weeks later around Christmas time and Defendant complained that Mr. Turrigiano did a terrible job installing the Stove and ripped him off.  Mr. Turrigiano did nothing about Defendant's complaint.

The Defendant contacted two other Vermont Castings sales representatives in the county who purportedly refused to get involved in a "secondhand" job that originated with another representative.  A sales representative from BAC, a distributor for Vermont Castings, visited the Defendant's home to look at the Stove and installation but it is uncertain what resulted from that visit and whether any action was taken by BAC or Vermont Castings.  Eventually, the Defendant hired a contractor to remove the Stove and to plug the hole in the Stove pipe exiting the roof without taking the pipe out from the roof.  Defendant then returned the Stove to the Debtor by leaving the Stove at the Debtor's store.  Defendant states while the Debtor's business  was closed, Christine, an employee of the Debtor who is also Mr. Turrigiano's wife, was there and was aware that the Defendant was returning the Stove back to the Debtor.  Defendant did not ask for any return receipt.

The Defendant subsequently attempted to get the $1,961.26 he charged on his Bank of America credit card for the payment of the Stove reversed.  Eventually, Bank of America reversed the charges and gave the Defendant a credit of $1,961.26.  The Debtor never did anything to dispute the reversal of the charges.  Rather, the Trustee seeks full payment of the Invoice in this adversary proceeding.

Mr. Turrigiano disputes that the Debtor received the returned Stove.  He claims that after he was contacted by the Trustee's office about the return of the Stove, he drove by the Debtor's residence and not only saw the pipe still in the Defendant's roof but also saw the Stove in the Defendant's home when he looked in through a door window.

After considering the testimonies of the Defendant and Mr. Turrigiano, the Court finds the Defendant's seeking a reversal of the credit card charges for the Stove and the Debtor's

failure to dispute the reversal to be consistent with the Defendant's testimony regarding his dissatisfaction with either the Stove and/or the installation and the return of the Stove. In addition, it appears that Defendant had requested information from Mr. Turrigiano at a deposition regarding contact information for Christine so he could obtain Christine's testimony but it appears that Mr. Turrigiano refused to provide such information. Neither has the Trustee disputed this or presented any testimony from Christine as to whether she witnessed the return of the Stove by the Debtor.

## DISCUSSION

The Trustee argues that the Debtor performed the installation of the Stove at the Defendant's premises at the contract invoice price of $4,245.51 and that the sum is owed by the Defendant. Accordingly, the Trustee makes a demand for the turnover of $4,245.51 as property of the estate. At the trial, the Trustee raises for the first time the argument that the bankruptcy estate is entitled to the $4,245.51 under New York Uniform Commercial Code § 2-606 on the basis that the Defendant accepted the Stove and installation and is obligated to pay for the them in the amount shown on the Invoice.

Section 2-606 of New York's Uniform Commercial Code provides in pertinent part:

§ 2-606.        What constitutes Acceptance of Goods.
(1) Acceptance of goods occurs when the buyer
        (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
        (b) fails to make an effective rejection (subsection (1) of Section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them....

N.Y. U.C.C. Law §2-606(1).

Section 2-602(1) as referenced in N.Y. U.C.C. Law § 2-606(1)(b) sets forth that "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." N.Y. U.C.C. Law §2-602(1).

The Court finds that while the Defendant did take delivery of the Stove and allowed Mr. Turrigiano to install the Stove and the piping the Trustee failed to prove that the Defendant accepted the Stove and the installation as set forth under N.Y. U.C.C. Law § 2-606. In order to have an acceptance, the Defendant must have had a reasonable opportunity to inspect the goods. In this case, the Defendant did not have a reasonable opportunity to conduct an inspection of Stove and the venting of the Stove at the time of installation because Mr Turrigiano took approximately 6 or 7 hours to install the Stove and piping and then immediately left after the installation without testing the Stove. The Defendant's opportunity to test the Stove and the installation occurred later that evening when he lit the Stove and discovered there to be a problem with either the Stove and/or the installation of the Stove and piping due to the explosion that occurred and the leakage of rain water a few days later.

The next day after the Stove was installed and the explosion occurred, the Defendant attempted to contact the Debtor by phone for at least two days and stopped by the Debtor's business premises but was unable to reach any employee of the Debtor. The Debtor's closing of its business due to the conversion of the case and Mr. Turrigiano's deliberate decision to not give the Defendant his phone number stymied the Defendant's attempt contact the Debtor to immediately address any issues relating to either a defective Stove or installation or to notify the Debtor of any intention to reject the Stove and the installation. Even when Mr. Turrigiano encountered the Defendant at a Home Depot a few weeks after the installation and the Defendant

complained about the work done, Mr. Turrigiano did nothing to contact the Defendant or to address the Defendant's complaint nor did he dispute the reversal of the credit card payment for the Stove.

This was not a situation where the Defendant accepted the Stove and the installation despite the problems associated with them and then simply changed his mind about keeping the Stove when the Trustee demanded payment.   Rather, when the Defendant got no response from the Debtor, he actively sought out other sales representatives and had a representative from the distributor come look at the Stove and the installation in order to have any problems corrected. When it appeared that the situation could not be remedied, the Defendant returned the Stove to the Debtor and obtained a refund of the payment he made.   An employee of the Debtor, Christine, and counsel for the Trustee were notified of the return.   The Debtor was also put on notice that the Defendant had rejected the Stove when the Defendant sought to obtain a refund of the $1,961.26 he initially paid to the Debtor for the Stove.   The fact that the Defendant could not inform the Debtor and Mr. Turrigiano of the problems with the Stove and/or installation and his wish to reject after discovering problems with the Stove or the installation was not the Defendant's fault or the result of any negligence on the Defendant's part.   Accordingly, the Court finds that the Defendant rejected the goods within a reasonable time after their receipt and opportunity for inspection and that the Debtor was seasonably notified of such rejection pursuant to N.Y. U.C.C. Law § 2-602(1).

The Court notes that even if the Defendant kept the Stove on the premises after he notified the Trustee's counsel of his rejection as alleged by Mr. Turrigiano, the Defendant was under no obligation to the Debtor with respect to the goods other than to hold them with

reasonable care at the Debtor's disposition for a time sufficient for the Debtor to remove them. In this case there was no evidence that the Debtor or the Trustee took any action to remove the Stove and the piping.  Rather the Defendant took it upon himself to return the Stove to the Debtor when the Debtor failed to respond to the Defendant's complaint or provide any instructions.

In addition, the Court finds no evidence that the Defendant agreed to pay a total of $4,245.51 for the Stove and installation.  Mr. Turrigano did not provide the Defendant with a final cost for the installation of the Stove.

Section 2-305 of N.Y. U.C.C. Law provides in pertient part:

**§ 2-305.  Open Price Term.**

(1) The parties if they so intend can conclude a contract for sale even though the price is not settled.  In such a case the price is a reasonable price at the time of the delivery if
    (a) nothing is said as to price; or
    (b)the price is left to be agreed by the parties and they fail to agree; or
    (c) the price is left to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and is not so set or recorded.
(2) A price to be fixed by the seller or the buyer means a price for him to fix in good faith.
(3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other party may at his option treat the contract as cancelled or himself fix a reasonable price.
(4) Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract.  In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

N.Y. U.C.C. Law § 2-305.

With the price of the installation left open, the price of installation would be the reasonable price

on the date of the installation.  However, there was no evidence presented that the approximately $2,000 charged by the Debtor above the price of the Stove was reasonable at the time of installation.  There are no records of any measurements taken by Mr. Turrigiano regarding the amount of materials needed and used or any calculation showing how the Debtor derived the cost of the installation on the Invoice nor is there any evidence or testimony regarding what the reasonable market price would be for the materials provided and the labor undertaken.  In addition, the Defendant raised various reasonable defenses against the cost of the installation contained in the Invoice which were not addressed by the Trustee.  Accordingly, the Court must deny the Trustee's request for relief under its first and second causes of action.

While the Defendant has submitted a counterclaim in the sum of $525 for the rug that was allegedly ruined when a glass panel exploded from the Stove's door, the Defendant has not submitted any documentary evidence in support of the actual amount of the damages with respect to the rug and none of the receipts the Defendant provided regarding the cost of repair for damages to the Defendant's residence were admitted into evidence.  Accordingly, the Court cannot award the Defendant damages with respect to his counterclaim.

<u>CONCLUSION</u>

Based upon the foregoing, the Trustee's Complaint against the Defendant is dismissed and the Defendant's counterclaim is also dismissed.

The Court shall enter a separate order consistent with this memorandum decision.

**Dated: Central Islip, New York**
**February 22, 2011**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**

11